UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J. HANNA,<br><br>           Plaintiff,<br><br>       v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>           Defendant. | Case No. ED CV 16-218-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On February 4, 2016, plaintiff Timothy J. Hanna filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the

1

Administrative Law Judge ("ALJ") properly considered the opinions of the treating physicians; (2) whether the ALJ properly evaluated plaintiff's credibility; and (3) whether the ALJ considered all impairments in making the residual functional capacity ("RFC") determination. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-13.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinions of the treating physicians, and did not err as plaintiff contends in determining plaintiff's RFC. But the court also finds the ALJ erred in discounting plaintiff's credibility. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-nine years old on his alleged disability onset date, attended four years of high school and continuation school but did not graduate. AR at 29, 63. Plaintiff has past relevant work as a delivery driver and tractor-trailer truck driver.[1] *Id*. at 343.

On April 2, 2012, plaintiff filed an application for a period of disability and DIB, alleging an onset date of July 28, 2009 due to severe back injuries. *Id*. at 63. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 88-91, 98-105.

---

[1] In the decision, the ALJ stated "the vocational expert testified that [plaintiff] had no past relevant work over the last 15 years." AR at 18. But this was an error. The vocational expert testified plaintiff's past relevant work summary at Exhibit 11E, which listed delivery driver and tractor trailer driver as past relevant work, was accurate. *See id*. at 55, 343.

2

On March 19, 2014, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *See id.* at 26-61. The ALJ also heard testimony from Dr. John Morse, a medical expert, and Alan Ey, a vocational expert. *See id*. at 36-46, 55-58. On April 24, 2014, the ALJ denied plaintiff's claim for benefits. *Id*. at 12-20.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since July 28, 2009, the alleged disability onset date. *Id.* at 14.

At step two, the ALJ found plaintiff suffered from the severe impairment of multilevel lumbosacral degenerative disc disease. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 16.

The ALJ then assessed plaintiff's RFC,[2] and determined he had the RFC to perform a light work with the limitations that he could: lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday, with normal workday breaks and the ability to change positions briefly, for one to three minutes every hour; and occasionally climb stairs and ramps, bend, balance, stoop, kneel, crouch, or crawl. *Id*. at 16-17. The ALJ also precluded plaintiff from climbing ladders, ropes, and scaffolding, as well as concentrated exposure to dangerous or fast moving machinery or unprotected heights. *Id*. at 17.

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work. *Id*. at 18.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including cashier II and storage facility clerk. *Id*. at 19. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 19-20.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole,

4

"weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.
# **DISCUSSION**

## A. **The ALJ Properly Considered the Medical Opinions**

Plaintiff argues the ALJ failed to properly consider the opinions of his treating physicians, Dr. Jack Akmakjian and Dr. Robert I. Woods. P. Mem. at 3-5. Specifically, plaintiff contends the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Akmakjian's and Dr. Woods's opinions. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[3] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).

---

[3] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. **Dr. Robert I. Woods**

Dr. Robert I. Woods, an orthopedist, examined plaintiff three times, on November 23, 2010, October 27, 2011, and May 11, 2012. *See* AR at 410, 545, 640. Plaintiff characterized Dr. Woods as a treating physician, but the record indicates Dr. Woods only acted as an examining physician in plaintiff's worker's compensation case. *See id.* at 410, 545, 640.

During the examinations, Dr. Woods observed plaintiff could heel-toe walk, do a full deep knee bend, do heel lifts, and stand erect. *See id.* at 418, 549-50, 643-44. X-rays reviewed plaintiff had, inter alia, a mild to moderate scoliotic S-curve, intervertebral disc space narrowing with spondylosis that improved from advanced to moderate, and diffuse vacuum disc phenomenon. *See id.* at 551. Dr. Woods

diagnosed plaintiff with advanced degenerative disc disease at L2-3 and L3-4, moderate scoliosis, and large herniated nucleus pulposus with neurofororaminal narrowing at multiple levels. *See id.* at 421, 557, 651. Dr. Woods opined plaintiff would require work accommodations precluding him from "substantial work and prolonged standing," but no other functional limitations. *Id.* at 559.

### 2. **Dr. Jack Akmakjian**

Dr. Jack Akmakjian, an orthopedist, examined plaintiff on April 13, 2010 and June 18, 2010. *Id.* at 372-78. Dr. Akmakjian also reviewed plaintiff's medical records. *See id.* at 375-76. Although plaintiff characterized Dr. Akmakjian as a treating physician and Dr. Akmakjian submitted an evaluation as a treating physician, there is only one treatment note, from the June 18, 2010 examination. *See id.* at 372. Dr. Woods referenced a May 25, 2010 report from Dr. Akmakjian, but the report is not in the record. *See id.* at 555.

At the initial examination, Dr. Akmakjian observed plaintiff had normal range of motion, had pain when lowering the leg, needed to bend his knees when doing a heel-toe walk, was able to heel walk, could squat and rise without difficulty, and had tenderness. *Id.* at 375. Based on the examination and images, Dr. Akmakjian diagnosed plaintiff with multiple levels of degenerative disc disease and herniated discs throughout the thoracic and lumbar spine, as well as facet arthropathy. *Id.* at 377. Dr. Akmakjian did not opine any functional limitations.

### 3. **Dr. John Morse**

Dr. John Morse, a cardiologist, testified as a medical expert at the hearing. *Id.* at 36-46. Dr. Morse listened to plaintiff's testimony and reviewed all of plaintiff's medical records. *Id.* at 36. Dr. Morse testified that plaintiff had non-severe hypertension because his heart function and ejection fraction were normal and he had no significant clinical sequelae. *Id.* at 37. Based on plaintiff's evaluations and images, Dr. Morse testified plaintiff had lumbosacral degenerative

7

disc disease and multi-level foraminal impingement problem, but no neurological deficits. *Id*.

Dr. Morse opined plaintiff could: lift ten pounds frequently and twenty pounds occasionally; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes and scaffolds; and occasionally stoop, kneel, crouch, and crawl. *Id*. at 38. Dr. Morse also precluded plaintiff from concentrated exposure to hazardous machinery and unprotected heights. *Id*.

### 4. State Agency Physicians

Two state agency physicians reviewed plaintiff's medical records and offered opinions on plaintiff's RFC. Dr. Stephen A. Whaley and Dr. E. Christian opined plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for six hours in an eight-hour work day; and stoop occasionally. *Id*. at 70, 84

### 5. The ALJ's Findings

In the RFC determination, the ALJ concluded plaintiff had the RFC to perform light work, with the limitations that plaintiff could: lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour day; stand and/or walk for six hours, with normal workday breaks and the ability to change positions briefly, for one to three minutes every hour; and climb stairs, ramps, bend, balance, stoop, kneel, crouch, or crawl occasionally. *Id*. at 16-17. The ALJ also found other postural limitations. *Id*. at 17. In reaching the RFC determination, the ALJ gave significant weight to the opinion of the medical expert and weight to the opinions of the State Agency physicians.[4] *Id.*

---

[4] Because plaintiff only contends the ALJ improperly rejected the opinions of the examining orthopedists, this court will not address non-orthopedic related opinions.

Plaintiff contends the ALJ improperly gave greater weight to Dr. Morse's opinion than the opinions of Dr. Woods and Dr. Akmakjian. P. Mem. at 3-4. Specifically, plaintiff argues that the ALJ's reasons for giving Dr. Morse's opinion significant weight – no treating physician credibly opined a more limiting RFC, it was consistent with the record, it was his area of specialization, and it was consistent with the opinions of the State Agency physicians – were not specific and legitimate and supported by substantial evidence. *Id*. at 4.

Plaintiff's argument concerning Dr. Akmakjian is fundamentally flawed. Dr. Akmakjian did not offer an opinion as to plaintiff's functional limitations. Plaintiff contends Dr. Akmakjian opined plaintiff was limited to lifting no more than ten pounds (*id.*), but that was the opinion of a chiropractor at Dr. Akmakjian's practice and was limited to the period between July 28, 2010 and August 31, 2010. *See* AR at 395. Further, a chiropractor is not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a), (d)(1). The ALJ cannot have improperly rejected Dr. Akmakjian's opinion when he offered none.

As for Dr. Woods, plaintiff argues Dr. Woods opined plaintiff should be limited to sitting for 30 to 40 minutes at a time. *See* P. Mem. at 4. But what plaintiff contends is Dr. Woods's opinion is actually a history of plaintiff's own subjective complaints to Dr. Woods. *See* AR at 413. To the extent Dr. Woods's statement that plaintiff should be precluded from "substantial work and prolonged standing" can be interpreted as an opinion regarding plaintiff's functional limitation, Dr. Woods defined neither "substantial work" nor "prolonged." *See id*. at 559. And in any event, the ALJ limited plaintiff to light work with the ability to change positions, which is consistent with Dr. Woods's opinion.

Plaintiff also argues that another physician offered an opinion consistent with Dr. Akmakjian's and Dr. Woods's opinions, as plaintiff characterizes them. P. Mem. at 4. Dr. Wartland, an examining physician purportedly opined plaintiff

had walking, sitting, and standing limitations. *See* AR at 1414. That checklist opinion was unsigned and apparently contradicted by another unsigned opinion from another physician from the same practice who opined plaintiff had no limitations. *See id*. at 1418. And in any event, the limitations purportedly opined by Dr. Wartland were not opined by Dr. Woods or Dr. Akmakjian, as discussed.

While the ALJ did not improperly reject Dr. Woods's or Dr. Akmakjian's opinions, the ALJ's reasons for giving Dr. Morse's opinion significant weight were supported by the evidence. First, as discussed above, no treating or examining physician in fact offered an opinion regarding plaintiff's functional limitations. Second, Dr. Morse's opinion was consistent with the record, which showed, inter alia, plaintiff had a normal gait, was able to stand erect, could do deep knee bends, and engaged in a variety of activities despite the pain. *See, e.g., id*., at 418, 460, 549-50, 643-44; *see also Morgan*, 169 F.3d at 600 (the opinions of non-examining physicians may serve as substantial evidence when the opinions are consistent with other evidence in the record such as clinical findings). Third, the ALJ may properly give greater weight to Dr. Morse's opinion regarding plaintiff's hypertension as he is a cardiologist. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (noting the agency generally gives more weight to specialists than to the opinion of a medical source who is not a specialist). Finally, Dr. Morse's opinion was consistent with the other opinions in the record.

Accordingly, the ALJ did not improperly reject the opinions of Dr. Woods and Dr. Akmakjian.

## B. The ALJ Erred in Discounting Plaintiff's Credibility

Plaintiff argues the ALJ failed to properly consider his credibility. P. Mem. at 5-7. Specifically, plaintiff contends the ALJ's reasons for finding him less credible were not clear and convincing and supported by substantial evidence. *See id*.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 18. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided four reasons for discounting plaintiff's credibility: (1) his alleged limitations were inconsistent with his daily activities;

(2) his non-compliance with his prescribed medical treatment; (3) his failure to make healthy lifestyle choices; and (4) he received conservative treatment. *Id*. Only one of these reasons is clear and convincing and supported by substantial evidence.

The ALJ's first reason for finding plaintiff less credible was because his testimony concerning his limitations was inconsistent with his daily activities. *Id*.; *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (inconsistency between a claimant's testimony and conduct may be a clear and convincing reason to discount his testimony); *Tommasetti*, 533 F.3d at 1039. A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). But a claimant's ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit him. *Morgan*, 169 F.3d at 600.

At the March 2014 hearing, plaintiff testified that, due to his pain, he could not do anything repetitive, could not sit down for long periods of time, had difficultly walking, could stand still for only about five minutes, drove a motorcycle about a mile once a month, could only lift a gallon of milk, and did not do household chores. AR at 35, 48-49, 52. But in May 2012, plaintiff reported to Dr. Woods that he did light grocery shopping, laundry, picked up after his dog, did household chores, cooked, cleaned the litter box, rode a motorcycle on occasion, and watched television. *See id*. at 549. And in a Daily Function Report dated July 7, 2012, plaintiff stated he cooked, cleaned the house, and did light yard work

including raking and weeding, but needed help with heavy work and driving.[5] *Id.* at 283-84.

Plaintiff's ability to engage in certain of these activities such as weeding, yard work, and cleaning was inconsistent with the degree of incapacitation he alleged and suggested the ability to engage in work activities. Moreover, as the ALJ noted elsewhere in the decision, in September 2012, plaintiff reported that he could bend forward, bend, stoop, squat, sit and stand for longer periods, twist, and kneel despite marked pain and without much difficulty.[6] *Id.* at 15. Although plaintiff's behavior at the hearing – plaintiff stood up twice in thirty minutes due to pain, as well as sat with both hands touching the seat and leaning forward at the waist in order to keep weight off his back – suggested his symptoms had increased since the 2012 reports, the evidence may reasonably support affirming the ALJ's finding. *See id.* at 49, 51. Accordingly, the court will not substitute its judgment, and finds this reason for discounting plaintiff's credibility to be clear and convincing.

The ALJ's second reason for the adverse credibility finding was his failure to adhere to his treatment plan. *Id*. at 18. *See Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment weighs against a claimant's credibility). The ALJ noted plaintiff failed to undergo back surgery as recommended, failed to stop chiropractic treatment as advised, and failed to take

---

[5] The ALJ stated that plaintiff, on February 2013, reported being capable of performing light housework, cooking meals, driving and shopping, but this finding is not supported by the record. *See* AR at 18. The ALJ cited to the February 2013 Disability Determination Explanation upon reconsideration, which referenced plaintiff's responses in his July 2012 Adult Function Report. *See id*. at 82.

[6] Indeed, throughout 2011 and 2012, plaintiff consistently reported to Dr. Rosen that he could bend forward, bend, stoop, squat, sit and stand for longer periods, twist, and kneel despite marked pain and without much difficulty. *See, e.g., id*. at 460, 1144, 1150, 1157, 1164.

13

his blood pressure medication. *See* AR at 18.

This second reason is not supported by the evidence. First, although the failure to seek prescribed treatment may be a basis for discounting a claimant's credibility, here plaintiff had a good reason for not proceeding with surgery, namely, the insurance company would not authorize the surgery. AR at 547; *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). Second, although Dr. Woods initially recommended against chiropractic treatment, this was merely a one-time recommendation by an examining physician and not a course of treatment prescribed by a treating physician. *See id*. at 424. Moreover, this is not a case where plaintiff was failing to seek medical treatment. Instead, plaintiff was following a form of treatment recommended by other physicians. *See id*. at 560. Finally, the ALJ appears to have misinterpreted plaintiff's medical records regarding his hypertension medication. In October 2011, plaintiff sought treatment at the emergency department, which diagnosed plaintiff with "medical noncompliance" for "no hypertensive medication." *See id*. at 621. But the emergency department record and other medical records indicate plaintiff was not being treated for hypertension at the time. *See id*. at 530, 619. Instead, plaintiff exhibited hypertension in July 2011 and after two additional visits to the hospital emergency department in the succeeding months, plaintiff sought treatment. *See id*. at 720. As such, the evidence did not support the ALJ's finding of noncompliance.

The third reason cited by the ALJ for discounting plaintiff's credibility was his failure to make healthy lifestyle choices, in particular, using cigarettes, marijuana, and alcohol. *Id*. at 18; *see id.* at 1422. At the March 2014 hearing, plaintiff testified he: smoked cigars but was trying to quit; had used medical marijuana in the past, with his last use in November 2012; and did not then drink

but had consumed alcohol as recently as the prior Christmas. *Id.* at 34. It is unclear how plaintiff's cigar smoking, past use of medical marijuana, and past use of alcohol affected his credibility. To the extent the ALJ believed plaintiff's cigar use was against medical advice and contributing to his hypertension, plaintiff testified he was trying to quit and making progress. *Id.* Plaintiff also indicated he had already quit drinking alcohol and using marijuana. *Id.* And when plaintiff used medical marijuana he had a valid prescription, so that was not a basis for finding him less credible.[7] *See Haworth v. Colvin*, 2015 WL 882609, at *4 (C.D. Cal. Mar. 2, 2015) (claimant's use of medical marijuana was not a clear and convincing reason for discounting his credibility because he had a valid prescription).

      Finally, the ALJ discounted plaintiff's credibility because he received conservative treatment. AR at 18. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). Plaintiff was prescribed narcotic medication, had epidural steroid injections, and was recommended surgery. *See, e.g.*, *id.* at 472, 530, 545-48. Setting aside the surgery recommendation, the use of narcotic medication and epidural steroid injections is typically considered not conservative. *See, e.g., Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Soltero De Rodriguez v. Colvin*, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015) ("[T]he use of narcotic medication in conjunction with other treatments is generally viewed as non-conservative treatment."); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics,

---

    [7]    The record does not indicate which physician prescribed the medical marijuana.

15

steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative). Nevertheless, even if the injections and narcotic medication could be considered conservative treatment, surgery is indisputably not conservative. Although plaintiff had not yet undergone surgery, as noted, this was because the insurance company would not authorize the surgery.

Accordingly, the ALJ cited only one clear and convincing reason supported by substantial evidence for finding plaintiff's complaints to be not entirely credible, that his alleged limitations were inconsistent with his reported daily activities. In some cases, that the ALJ discounted plaintiff's credibility based on some reasons that were not in fact clear and convincing is harmless error. *See Batson v. Comm'r*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record). But here, the majority of reasons cited were not credible, and the ALJ suggested her finding that plaintiff's daily activities were inconsistent with disability was by itself "not controlling." *See* AR at 18. Given this, the sole clear and convincing reason cited by the ALJ was not sufficient by itself for the ALJ to have discounted plaintiff's credibility. As such, the ALJ erred in discounting plaintiff's credibility for the reasons she stated.

C. **The ALJ Considered All Impairments in the RFC Determination**

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. P. Mem. at 7-10. Specifically, plaintiff contends the ALJ erred at step two when, contrary to medical evidence, she failed to find plaintiff's scoliosis was severe. *Id*. at 8. Plaintiff also contends that regardless of whether scoliosis was severe under step two, the ALJ was required, but failed, to consider

16

the pain limitations resulting from the impairments in the RFC determination.[8] *See id.* at 8-9.

1. **Step Two**

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

Here, the ALJ found plaintiff suffered from the severe impairment of multilevel lumbosacral degenerative disc disease. AR at 14. In reaching this finding, the ALJ noted that March 2010 x-rays showed, inter alia, lumbar scoliosis, but did not engage in any further discussion of the impairment or its resultant symptoms. *See id.* at 15. The mere diagnosis of an impairment does not establish that it was severe. *See Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the [claimant] clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993) ("The mere existence of an impairment is insufficient proof of a disability."). Here, the medical records did not discuss the severity of plaintiff's scoliosis and if and how it impaired him. Thus, the ALJ did not err at step two.

Further, even if the ALJ had erred, the error would be harmless because the ALJ considered plaintiff's pain allegations in the RFC determination as discussed below. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the ALJ considered it in the RFC

---

[8] Plaintiff also argues that the ALJ improperly rejected the opinions of Dr. Woods and Dr. Akmakjian and therefore failed to include their limitations in her RFC determination. P. Mem. at 9-10. As discussed above, the ALJ did not improperly reject Dr. Woods's and Dr. Akmakjian's opinions because none were offered.

17

assessment).

## 2. **RFC Determination**

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.* Thus, the ALJ was obligated to consider plaintiff's pain in assessing his RFC, notwithstanding the ALJ's failure to find his scoliosis to be a severe impairment. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

In the RFC section, the ALJ primarily discussed the medical opinions, the weight given to the medical opinions, and plaintiff's credibility. *See* AR at 17-18. Elsewhere in the decision, however, the ALJ discussed the objective findings behind the medical opinions regarding plaintiff's back injury and plaintiff's subjective allegations of pain. *See id.* at 14-16; *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (ALJ is not required to discuss the evidence supporting the step three determination in a "Step Three Findings" section itself and, instead, may meet this requirement by discussing the relevant evidence supporting the step three determination anywhere in the decision). Thus, it is reasonably evident the ALJ considered plaintiff's pain allegations in the RFC determination.

Accordingly, the ALJ did not err at step two and properly considered all impairments in the RFC assessment.

# V.
# **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this

discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to properly assess plaintiff's credibility, and it is unclear whether with proper consideration the ALJ would be required to find plaintiff disabled. On remand, the ALJ shall reconsider plaintiff's credibility and either accept his testimony or provide clear and convincing reasons for rejecting it. The ALJ shall then again determine plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and

REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: August 31, 2017

SHERI PYM
United States Magistrate Judge